# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Herbert Pitts,                                          Case No. 17-cv-4261 (MJD/TNL)

       Plaintiff,

v.                                                      **REPORT &**
                                                        **RECOMMENDATION**

Ramsey County,
St. Paul Police Department, and
Lt. (Unknown),

       Defendants.

---

Herbert Pitts, R47524, Vienna Correctional Center, 6695 State Route 146 East, Vienna, IL 62995 (pro se Plaintiff);

Robert B. Roche, Assistant County Attorney, Ramsey County Attorney's Office, 121 Seventh Place East, Suite 4500, St. Paul, MN 55101 (for Defendant Ramsey County); and

Portia M. Hampton-Flowers, Deputy City Attorney, St. Paul City Attorney's Office, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102 (for Defendant St. Paul Police Department).

---

## I. INTRODUCTION

This matter comes before the Court on Defendant Ramsey County's Motion to Dismiss (ECF No. 15) and Defendant St. Paul Police Department's[1] Motion to Dismiss

---

[1] Although the title of the St. Paul Police Department's motion suggests that the motion is being brought only with respect to the police department itself, the supporting memorandum and reply indicate that the motion is being brought with respect to all St. Paul defendants. (*See, e.g.*, SPPD's Mem. in Supp. at 5 ("As such, Plaintiff's Complaint fails to state a claim against the St. Paul Police Department or any St. Paul Police officer upon which relief can be granted."), 6 ("Absent a clearly stated cause of action under §[]1983, Plaintiff cannot recover against the St. Paul Police Department or any of its officers for the matters alleged in the Complaint. Consequently, Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted."), ECF No. 20; SPPD's Reply at 6 ("Based upon the pleadings and all the arguments submitted, the St. Paul

(ECF No. 19) (collectively, "Defendants"). Plaintiff proceeds pro se. Assistant County Attorney Robert B. Roche represents Ramsey County. Deputy City Attorney Portia M. Hampton-Flowers represents the St. Paul Police Department. This matter has been referred to the undersigned for a Report and Recommendation to the Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons that follow, this Court recommends that Defendants' motions be granted.

## II. BACKGROUND

According Plaintiff's documents the most generous construction, Plaintiff brings the instant action against Defendants alleging excessive force, deliberate indifference to his medical needs, failure to investigate, and failure to train.

### A. Complaint

Plaintiff initially brought this action against Defendants Ramsey County, St. Paul Police Department, and Lt. (Unknown). (Compl. at 1-2.) Plaintiff alleges that, on July 23, 2015, he was at Regions Hospital in St. Paul, Minnesota, trying to visit his fiancée "who was badly injured and just came out of a coma." (Compl. at 4.) Plaintiff was approached by Lt. (Unknown), a St. Paul police officer, in the visiting room. (Compl. at 4.) Lt. (Unknown) asked for Plaintiff's name and identification. (Compl. at 4.) Lt. (Unknown) "ran [Plaintiff's] name" and learned that Plaintiff was subject to a domestic abuse no contact order. (Compl. at 4.) Lt. (Unknown) then placed Plaintiff in handcuffs and, upon

---

Police Department respectfully requests dismissal of Plaintiff's initial and Amended Complaints and all claims asserted against the [St.] Paul Defendants."), ECF No. 31.)

return from his fiancée's hospital room, began "screaming and hollering[,] calling [him] derogatory names[,] and . . .beat[ing him] with [a] baton." (Compl. at 4.)

Plaintiff alleges he was later "transferred to [the] Ramsey County jail and Ramsey County workhouse where [he] was treated for . . . injuries to [his] wrist, forearm, shoulder, [and] back." (Compl. at 4.) While at the Ramsey County jail, Plaintiff reported the incident to "Internal Affairs," which began an investigation. (Compl. at 4.) "Internal Affairs" discovered that the incident was recorded on video. (Compl. at 4.) "[N]o further investigation [was] done." (Compl. at 4.)

Plaintiff alleges that Lt. (Unknown)'s actions amounted to "cruel [and] unusual punishment," causing him "MENTAL and PHYSICAL pain." (Compl. at 4.) Plaintiff seeks "monetary compensation for damages and loss" in the amount of $2,000,000. (Compl. at 4).

### B. Objection to Ramsey County's Motion to Dismiss

In response to Ramsey County's motion to dismiss, Plaintiff filed a "Notice of Motion to Object to the Defendant's [sic] Ramsey County Minnesota Motion to Dismiss" ("Objection") (ECF No. 22). In the Objection, Plaintiff claims Ramsey County was deliberately indifferent to his medical needs when Ramsey County "failed to provide [him] with immediate medical treatment for [his] injuries that [he] sustained as a result of [Lt. (Unknown)] beating [him] illegally on camera." (Objection at 1.) Plaintiff further claims "he was not properly treated" because he was not "given medication, x-rays, a sling for arm, ice for injuries, etc." (Objection at 1.)

### C. Amended Complaint

While the motions to dismiss were being briefed, Plaintiff filed an "Amended Complaint" (ECF No. 27). With respect to Lt. (Unknown), Plaintiff added that Lt. (Unknown)

> [s]ubjected [him] to being physically beaten in violation of [his] Due Process/Equal Protection of Law Under the U.S. Constitutions 8th and 14th Amendments when he under color of state law committed excessive force against [him] maliciously and sadistically causing serious physical harm and wanton infliction of pain. The actions of [Lt. (Unknown)] has also caused aggravated existing back pain, POST TRAUMATIC STRESS DISORDER and IIED (intentional infliction of emotional distress) to [him] of cruel [and] unusual punishment a [sic] violation of [his] 8th Amendment rights the [sic] hitting of baton, kneeing and kicking [him] while handcuffed on camera.

(Am. Compl. at 1.)

With respect to the St. Paul Police Department, Plaintiff added that the St. Paul Police Department "fail[ed] to adequately train/supervise its police including police officer [Lt. (Unknown)], as part of his training when hired." (Am. Compl. at 1.)

Plaintiff also added the City of St. Paul as a defendant. (Am. Compl. at 1.) Plaintiff stated that the City of St. Paul "is liable for its failure to have and maintain a public sensibility training regimine [sic] and policy to protect citizens from police physical abuse." (Am. Compl. at 1).

### III. AMENDING THE COMPLAINT

Having filed an "Amended Complaint" relatively close in time to the motions to dismiss, Plaintiff appears to be attempting to amend the Complaint as a matter of course

under Fed. R. Civ. P. 15(a)(1)(B). Defendants contend that the "Amended Complaint" is not timely. (Ramsey County's Reply at 7 n.2, ECF No. 30; SPPD's Reply at 3-4.)

"A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed R. Civ. P. 15(a)(1)(B). The prison mailbox rule provides that if an inmate confined in an institution files a complaint, the complaint is timely if it is deposited in the institution's internal mail system on or before the last day for filing. *Sulik v. Taney Cty.*, 316 F.3d 813, 814-15 (8th Cir. 2003), *overruled on other grounds*, 393 F.3d 765 (8th Cir. 2005); *see United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006) ("Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline."). "Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." *Sulik*, 316 F.3d at 814 (quotation omitted). "[T]he leniency underlying the 'mailbox rule' is justified based on the inability of prisoner litigants to exercise control over the filings of their pleadings, and their dependence on prison officials for such filings." *Johnson v. Minn.*, No. 10-cv-861 (ADM/FLN), 2010 WL 2682865, at *3 n.1 (D. Minn. July 2, 2010); *see Sulik*, 316 F.3d at 815.

Plaintiff was confined at Graham Correctional Center, located in Hillsboro, Illinois, when he filed the Amended Complaint. (*See* ECF No. 27-2; Mar. 13, 2018 Ltr., ECF No. 33). The Amended Complaint contains the following statement:

> The Mailbox Rule deadline has been fully complied with and
> due to the fact of a delay in the mailroom process here at
> GRAHAM CORRECTIONAL CENTER and NOT
> ADEQUATE ACCESS TO THE LAW LIBRARY as a[]
> PRO SE LITIGANT in which it took three weeks to receive
> the Defendants Order [sic] for MOTION TO DISMISS,
> Plaintiff requests this Honorable Court not to fault Plaintiff in
> this amended complaint nor the Original Complaint that was
> filed against Defendants due to the same circumstances.

(Am. Compl. at 1-2.)  This statement was notarized by the Graham Correctional Center's law librarian on January 24, 2018. (Am. Compl. at 2; Mar. 13, 2018 Ltr. at 1.)

It is not explicitly clear from Plaintiff's submissions when the "Amended Complaint" was actually deposited into the prison mail system. Plaintiff's "Proof/Certificate of Service" for the "Amended Complaint" states that it was deposited into the prison mail system on January 23. (ECF No. 27-1.)  The "Amended Complaint" and Plaintiff's subsequent letter to the Court, however, reflect that the "Amended Complaint" was not notarized by the law librarian until the following day, January 24. (Am. Compl. at 2; Mar. 13, 2018 Ltr. at 1.) The envelope is postmarked the day after, January 25. Under the prison mailbox rule, the Court will consider the "Amended Complaint" to be filed as of January 24.

Ramsey County's motion to dismiss was filed first, on December 21, 2017. Under Rule 15(a)(1)(B), Plaintiff could amend his Complaint once as a matter of course on or before January 12, 2018. In the notarized statement, however, Plaintiff states that it took a few weeks (between two and three) for him to receive the motion to dismiss because of a delay in the mailroom process at the Graham Correctional Center. (Am. Compl. at 2 ("three weeks"), Mar. 13, 2018 Ltr. at 1 ("two weeks").). Plaintiff, in fact, submitted a

grievance to the Graham Correctional Center regarding the processing of his mail. (ECF No. 33-1.)  Giving Plaintiff the benefit of the doubt and taking as true his statement that he received the motion to dismiss three weeks late, the Court will, for purposes of considering the timeliness of the "Amended Complaint" only, consider Ramsey County's motion to dismiss to have been served on Plaintiff on January 12.

The "Amended Complaint" was filed on January 24, within 21 days of service of Ramsey County's motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). The "Amended Complaint" was also within 21 days of the second motion to dismiss, which was filed on January 2, 2018, by the St. Paul Police Department. *See* Fed. R. Civ. P. 6(a)(1); 15(a)(1)(B). Therefore, in the interests of completeness and in accordance with the principles underlying the prison mailbox rule and Rule 1 of the Federal Rules of Civil Procedure, this Court will consider Plaintiff to be in compliance with Rule 15(a)(1)(B)'s 21-day requirement and analyze Plaintiff's claims against Defendants as if the Amended Complaint was timely.

## IV. MOTIONS TO DISMISS

### A.  Legal Standard

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). "[A] judge

ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Id.* at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). Nonetheless, "this standard does not excuse pro se complaints from 'alleg[ing] sufficient facts to support the claims advanced.'" *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (per curiam) (alteration in original) (quoting *Stone*, 364 F.3d at 914).

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

At the same time, "[g]enerally, a government entity is not liable for its employee's actions under § 1983." *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1227 (8th Cir. 2015). A local government cannot be held vicariously liable under § 1983 for injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *accord Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Accordingly, "a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983." *Brockinton*, 503 F.3d at 674 (quotation omitted); *accord White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) ("Since § 1983 does not allow for vicarious liability, a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover under that statute." (quotation omitted)). "A governmental policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy." *Brockinton*, 503 F.3d at 674 (quotation omitted). "A governmental custom involves a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law." *Id.* (quotation omitted).

### B. Ramsey County

#### 1. Effect of "Amended Complaint"

As an initial matter, Ramsey County asserts that because the "Amended Complaint" contains no allegations against Ramsey County, "Plaintiff has abandoned his claims against Ramsey County." (Ramsey County's Reply at 7.) "It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Accordingly, having determined that the "Amended Complaint" was timely filed, the "Amended Complaint" effectively superseded Plaintiff's Complaint.

Other than naming Ramsey County as a defendant, the "Amended Complaint" contains no mention of Ramsey County. By failing to allege any claims against Ramsey County in the "Amended Complaint," Plaintiff has abandoned his claims against Ramsey County. *See, e.g.*, *Barnes v. United States*, 111 F. App'x 441, 443 (8th Cir. 2004) (per curiam) ("[T]he district court did not err in finding that the Discovery Channel Defendants had been dismissed from the suit by virtue of their absence from Barnes's Amended Complaint."); *Green v. Ramsey*, No. 14-cv-4856 (SRN/LIB), 2015 WL 5672990, at *6 (D. Minn. Sept. 24, 2015) (equal-protection claim deemed abandoned when not re-alleged in amended complaint). Nonetheless, in the interest of completeness, this Court will analyze Plaintiff's claims against Ramsey County as if they were procedurally proper.

### 2. *Monell* Claims

As best this Court is able to tell, having viewed the Complaint liberally and considered collectively allegations from all of Plaintiff's filings, Plaintiff appears to be asserting two claims against Ramsey County: a failure to investigate further the actions of Lt. (Unknown) and deliberate indifference to his medical needs.

### a. Failure to Investigate

In the Complaint, Plaintiff alleges he reported the incident with Lt. (Unknown) to "Internal Affairs" at the Ramsey County jail. (Compl. at 4.) Plaintiff alleges "Internal Affairs" determined the incident was recorded on video, but "no further investigation done." (Compl. at 4.)

The threshold inquiry in a § 1983 suit is identifying the specific constitutional right at issue. *Manuel*, 137 S. Ct. at 920. Plaintiff does not have a constitutional right to an investigation of Lt. (Unknown)'s alleged use of excessive force. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) ("Vinyard does not cite, nor have we found, any federal or state court decision, statute, regulation or other source of law that gives [the plaintiff] an entitlement to an internal investigation by the Sheriff's Office of her complaints of police brutality."); *see also Stringer v. Doe*, 503 F. App'x 888, 890-91 (11th Cir. 2013) (per curiam) ("Stringer also failed to state claims against the sheriff or deputy sheriff because Stringer did not have a substantive due process right to an internal investigation by the Sheriff's Department or law enforcement."). "There can be no *Monell* claim where there is no underlying violation of Plaintiff's constitutional rights." *Mallak v. Aitkin Cty.*, 9 F. Supp. 3d 1046, 1063 (D. Minn. 2014) (citing *Brockinton*, 503

F.3d at 674); *see Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) ("A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice." (citing *Monell*, 436 U.S. at 690-91)). Because Plaintiff does not have a constitutional right to an investigation, his claim against Ramsey County necessarily fails.

Moreover, as stated above, "a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983." *Brockinton*, 503 F.3d at 674 (quotation omitted). A plaintiff that "allege[s] no facts in his complaint that would demonstrate the existence of a policy or custom by [the county] that caused [the alleged] deprivation" fails to state a § 1983 claim against the county. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). Even assuming that Ramsey County's failure to investigate Plaintiff's complaints of excessive force by Lt. (Unknown)—a law enforcement officer employed by a *separate* government entity[2]— amounted to a constitutional deprivation, Plaintiff has not identified, or even alleged the existence of, any particular policy or custom of Ramsey County causing the alleged deprivation. Accordingly, Plaintiff has failed to state a claim against Ramsey County for failure to investigate.

### b.  Deliberate Indifference to Medical Needs

In the Complaint, Plaintiff alleges that he was "transferred to [the] Ramsey County jail and Ramsey County workhouse where [he] was treated for . . . injuries to [his] wrist,

---

[2] Ramsey County and the City of St. Paul are distinct legal entities. *See* Minn. Stat. § 383A.01; St. Paul Mun. Code §§ 1.01, 1.03; *cf.* Minn. Stat. § 466.02 ("[E]very municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.").

forearm, shoulder, [and] back." (Compl. at 4.) Later, in his Objection, Plaintiff states that Ramsey County was deliberately indifferent to his medical needs when it "failed to provide [him] with immediate medical treatment for [his] injuries" after the incident at Regions Hospital. (Objection at 1.) Plaintiff states that he did not receive proper medical treatment because he was not "given medication, x-rays, a sling for [his] arm, ice for [his] injuries, etc." (Objection at 1.) And, in a self-styled reply to Defendants' motions to dismiss, Plaintiff adds that "Ramsey County has violated an oath to treat all detainees fair and humane and failed to respond reasonably to [his] medical needs from serious injuries [he] suffered from [Lt. (Unknown)] that was on camera." (Pl.'s Reply, ECF No. 32.[3])

Constitutional claims of deliberate indifference to the medical needs of arrestees are analyzed under "the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016); *accord Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *Vaughn v. Gray*, 557 F.3d 904, 908 n.4 (8th Cir. 2009). "The deliberate-indifference standard requires both an objective and subjective analysis." *Barton*, 820 F.3d at 964 (quotation omitted); *accord Vaughn*, 557 F.3d at 908. "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the

---

[3] Plaintiff's reply is not properly before the Court. Under this Court's Local Rules, a motion to dismiss is a dispositive motion. D. Minn. LR 7.1(c)(6)(B). For dispositive motions, the moving party files a supporting memorandum along with the motion, the responding party then files its responding memorandum, and then the moving party may either file a reply or a notice stating that no reply will be filed. D. Minn. LR 7.1(c)(1)-(3). The responding party is not permitted to file a reply. *See id.* This Court's Local Rules further provide that, "[e]xcept with the court's prior permission, a party must not file a memorandum of law except as expressly allowed under LR 7.1." D. Minn. LR 7.1(i). Plaintiff did not seek permission of the Court prior to filing his reply. Nevertheless, the Court has considered Plaintiff's reply in the interests of completeness.

defendant actually knew of, but deliberately disregarded, such need." *Vaughn*, 557 F.3d at 908 (citation omitted).

"To meet the objective component of the deliberate-indifference standard, the complaint must plead facts sufficient to demonstrate that [the arrestee] suffered from an objectively serious medical need." *Barton*, 820 F.3d at 964. "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). Viewing his filings as a whole, Plaintiff has alleged that he experienced pain and emotional distress and suffered non-specific injuries to his wrist, forearm, shoulder, and back as a result of Lt. (Unknown)'s alleged use of excessive force. Plaintiff has not alleged any facts showing the objective seriousness of his injuries. Plaintiff has not alleged that he showed obvious signs of injury which went untreated or that he requested medical treatment for his injuries and was denied. *See Bailey*, 810 F.3d at 594; *Grayson v. Ross*, 454 F.3d 802, 810 (8th Cir. 2006). In fact, Plaintiff alleged that he received treatment from Ramsey County for his injuries. Plaintiff's conclusory allegations are insufficient to establish that he suffered from an objectively serious medical need while in Ramsey County's custody.

"The subjective component requires a showing that [a defendant] actually knew that [the arrestee] needed medical care and disregarded a known risk to the arrestee's health." *Barton*, 820 F.3d at 965 (quotation omitted). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness . . . ." *Vaughn*, 557

F.3d at 908 (quotation omitted); *accord Barton*, 820 F.3d at 965. "A complaint must allege facts that demonstrate more than negligence, more even than gross negligence." *Barton*, 820 F.3d at 965 (quotation omitted). The requisite mental state can be inferred from facts "demonstrat[ing] that a medical need was obvious and that the officer's response was obviously inadequate." *Id.* (quotation omitted); *see Vaughn*, 557 F.3d at 908-09. Viewing Plaintiff's filings as a whole, Plaintiff has not alleged facts showing that Ramsey County was aware of Plaintiff's need for further medical attention—either from the obviousness of his injuries or requests for additional treatment—and failed to act. *See Barton*, 820 F.3d at 965; *Vaughn*, 557 F.3d at 909-10. Again, Plaintiff himself alleges that he received treatment from Ramsey County. Thus, even assuming for purposes of these motions that Plaintiff's non-specific "injuries" constituted objectively serious medical needs, Plaintiff has not alleged facts from which it can plausibly be inferred that Ramsey County actually knew of, but deliberately disregarded, those needs. *See Vaughn*, 557 F.3d at 909 n.5 ("A prison official cannot be held liable for deliberately disregarding the serious medical needs of an inmate without proof of his actual knowledge of that serious medical need.").

Lastly, like his claim for failure to investigate, Plaintiff has not identified, or even alleged the existence of, any particular policy or custom of Ramsey County causing the alleged indifference to his medical needs. *See Grayson*, 454 F.3d at 811; *see also Ulrich*, 715 F.3d at 1061. Therefore, Plaintiff has failed to state a claim against Ramsey County for deliberate indifference to his medical needs.

15

### C.  City of St. Paul

In his Complaint, Plaintiff named the St. Paul Police Department and Lt. (Unknown) as defendants. Subsequently, through the "Amended Complaint," Plaintiff named the City of St. Paul as a defendant as well. As explained below, the Court has construed Plaintiff's claims for excessive force and failure to train as being asserted against the City of St. Paul only.

### 1.  St. Paul Police Department

Any claim asserted against the St. Paul Police Department necessarily fails. The St. Paul Police Department is not a legal entity subject to suit. *Haggins v. City of St. Paul*, No. 09-cv-537 (DWF/RLE), 2010 WL 1380134, at *5 (D. Minn. Mar. 1, 2010) (St. Paul Police Department not a separate legal entity subject to suit), *adopting report and recommendation as modified*, 2010 WL 1379913 (D. Minn. Mar. 31, 2010); *see, e.g.*, *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) ("The West Memphis Police Department and West Memphis Paramedic Services are not juridical entities suable as such. They are simply departments or subdivisions of the City government."); *Anderson v. City of Hopkins*, 805 F. Supp. 2d 712, 719 (D. Minn. 2011) ("Municipal police departments are not legal entities subject to suit."); *Franco v. Grant*, No. 09-cv-0552 (JRT/SRN), 2010 WL 653855, at *6 (D. Minn. Feb. 22, 2010) ("A municipal police department is not a cognizable legal entity, or person, subject to suit under § 1983, but is simply part of a larger municipality."). Therefore, the Court recommends that Plaintiff's claims against the St. Paul Police Department be dismissed with prejudice.

### 2. Lt. (Unknown)

"A plaintiff may assert § 1983 claims against a public official acting in his individual capacity and in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *accord Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Eighth Circuit Court of Appeals has repeatedly emphasized the general rule that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson*, 172 F.3d at 535; *see Baker*, 501 F.3d at 923; *see, e.g.*, *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016); *Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015) (per curiam); *Kelly v. Ramsey Cty. Sheriffs Office*, No. 08-cv-5028 (JMR/JJK), 2009 WL 511695, at *4 (D. Minn. Feb. 27, 2009). There must be "a clear statement or a specific pleading" indicating that the defendants are being sued in their individual capacities. *Remington*, 611 F. App'x at 885 (quotation omitted); *see Kelly*, 818 F.3d at 1075 ("Because Kelly's complaint does not include an express statement that she is suing the individual defendants in their individual capacities, we consider her suit to be against the defendants in their official capacity.") (quotation omitted).

None of Plaintiff's filings specify the capacity in which Lt. (Unknown) is being sued. As Plaintiff has not expressly stated or pleaded that Lt. (Unknown) is being sued in his individual capacity, the Court construes Plaintiff's excessive-force claim as being brought against Lt. (Unknown) in his official capacity. *See, e.g.*, *Kelly*, 813 F.3d at 1075; *Remington*, 611 F. App'x at 885; *Baker*, 501 F.3d at 924; *Johnson*, 172 F.3d at 535.

"A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker*, 501 F.3d at 925 (quoting *Monell*, 436 U.S. at 690 n.55); *see Johnson*, 172 F.3d at 535 ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."). Accordingly, Plaintiff's excessive-force claim against Lt. (Unknown) in his official capacity is effectively against his employer, the City of St. Paul.

### 3. *Monell* Claims

Viewing the Complaint and the "Amended Complaint" liberally and construing together all of the allegations contained in Plaintiff's various filings, Plaintiff appears to be asserting two claims against the City of St. Paul: excessive force and failure to train.

### a. Constitutional Issue

Plaintiff has employed a variety of terms to describe the constitutional injury arising from Lt. (Unknown)'s alleged use of excessive force, including specific references to the Eighth and Fourteenth Amendments. (*See, e.g.*, Compl. at 4 ("cruel [and] unusual punishment"), Am. Compl. at 1 ("cruel [and] unusual punishment a violation of Plaintiffs [sic] 8th Amendment Rights"); Am. Compl. at 1 ("being physically beaten in violation of Plaintiffs [sic] Due Process/Equal Protection of Law under the U.S. Constitutions [sic] 8th and 14th Amendments"), Pl.'s Reply at 1 (same).) "All claims that law enforcement officers have used excessive force, whether deadly or not, in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard." *Nance v. Sammis*, 586 F.3d 604, 609-10 (8th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)); *see*

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) ("A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."). Accordingly, notwithstanding the references to the Eighth Amendment's cruel-and-unusual-punishment language, *see* U.S. Const. amend. VIII, the Court considers Plaintiff's claims under the proper framework of the Fourth Amendment in light of his pro se status.

### b. Excessive Force

In the Complaint, Plaintiff alleges that Lt. (Unknown) screamed and hollered at him, called him derogatory names, and beat him with a baton while he was handcuffed. (Compl. at 4.) In addition to being beaten, Plaintiff states in the "Amended Complaint" that Lt. (Unknown) also kneed and kicked him while he was handcuffed. (Am. Compl. at 1.) Plaintiff also states that the City of St. Paul "is liable for its failure to have and maintain a . . . policy to protect citizens from police physical abuse." (Am. Compl. at 1.)

Plaintiff's excessive-force claim against Lt. (Unknown) is in the officer's official capacity, namely, against the City of St. Paul. "A *Monell* claim against the municipality, on the basis of excessive force, cannot be maintained without some custom, or official policy, in place that would mandate such conduct." *Haggins*, 2010 WL 1380134, at *6; *see Farrington v. City of St. Paul*, No. 09-cv-1838 (DWF/JSM), 2011 WL 843913, at *7 (D. Minn. Mar. 8, 2011). As such, in order to state a claim under § 1983 against the City of St. Paul, Plaintiff must allege facts showing that a City of St. Paul policy or custom was the "moving force" behind Lt. (Unknown)'s alleged excessive force. *Monell*, 436 U.S. at 694; *Farrington*, 2011 WL 843913, at *7.

Plaintiff does not identify any City of St. Paul policy at issue or set forth facts showing that Lt. (Unknown) acted pursuant to a City of St. Paul policy. At most, Plaintiff alleges the absence of a policy. But "a municipality may not be held liable under § 1983 merely because it 'failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion.'" *Atkinson v. City of Mtn. View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 395 (8th Cir. 2007)).

Nor has Plaintiff pleaded sufficient facts showing that Lt. (Unknown)'s alleged excessive force was part of a City of St. Paul custom. A plaintiff must satisfy the following three requirements to prove a municipal custom exists:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (alteration in original) (quoting *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). Plaintiff does not allege the existence of a continuing, widespread, persistent pattern of excessive force by the City of St. Paul's law enforcement officers. Plaintiff's claim is based only the incident between Plaintiff and Lt. (Unknown). "A single incident normally does not suffice to prove the existence of a municipal custom." *Id.* at 1205; *see Szabla*, 486 F.3d at 393. Plaintiff does

not allege the City of St. Paul was deliberately indifferent to or tacitly authorized excessive force by its law enforcement officers after notice of the use of such force. Nor does Plaintiff plead facts showing that Lt. (Unknown)'s alleged use of excessive force was motivated by a City of St. Paul custom.

Because Plaintiff has not pleaded facts plausibly showing that Lt. (Unknown)'s alleged use of excessive force was pursuant to a City of St. Paul policy or custom, Plaintiff has failed to state a § 1983 claim against the City of St. Paul and Lt. (Unknown) in his official capacity. *See Watkins v. City of St. Paul*, No. 16-cv-2625 (DSD/SER), 2016 WL 6398287, at *1 (D. Minn. Oct. 27, 2016); *Farrington*, 2011 WL 843913, at *7; *Haggins*, 2010 WL 1380134, at *6; *Franco*, 2010 WL 653855, at *6.

### c.  Failure to Train

In the "Amended Complaint," Plaintiff states that the City of St. Paul has failed to adequately train its law enforcement officers, namely, by not providing "public sensibility training." (Am. Compl. at 1; *see also* Pl.'s Reply at 1.)

"[A] local government may be subject to § 1983 liability for 'inadequate training of its employees.'" *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The elements of § 1983 claim based on a municipality's failure to train are: "(1) the [municipality's] training practices were inadequate; (2) the [municipality] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects deliberate or conscious choice by [the municipality]; and (3) an alleged deficiency in the training procedures actually caused the

plaintiff's injury." *B.A.B. v. Bd. of Educ.*, 698 F.3d 1037, 1040 (8th Cir. 2012) (quotation omitted).

> The issue is whether, "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017) (alteration in original) (quoting *Canton*, 489 U.S. at 390). Claims for a failure to train or supervise proceed under the same analysis and "[n]either claim can succeed without evidence the municipality received notice of a pattern of unconstitutional acts committed by its employees." *Atkinson*, 709 F.3d at 1216-17 (quotation omitted); *see S.M.*, 874 F.3d at 585.

Plaintiff has not alleged any facts from which it can be plausibly inferred that the City of St. Paul was deliberately indifferent. "Deliberate indifference in this context 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *S.M.*, 874 F.3d at 585 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness." *B.A.B.*, 698 F.3d at 1040 (quotation omitted). Plaintiff has not alleged any facts regarding training in the use of force, or the absence thereof, provided by the City of St. Paul to its law enforcement officers. Plaintiff has not alleged any facts showing that the City of St. Paul was on notice that training in the use of force by its law enforcement officers was inadequate. *See Atkinson*, 709 F.3d at 1217. Similarly, Plaintiff has not alleged facts showing that the

22

need for more or different training "was 'so obvious' so as to implicate indifference rising to the level of *criminal recklessness*.'" *Daywitt v. Minn.*, No. 14-cv-4526 (MJD/LIB), 2015 WL 4094199, at *11 (D. Minn. July 6, 2015); *see Szabla*, 486 F.3d at 393. Lastly, even under the liberal construction accorded to pro se pleadings, the Court is hard-pressed to conclude that it can plausibly inferred that the training deficiency identified by Plaintiff—"public sensibility training"—caused the alleged constitutional injury of excessive force. *See Farrington*, 2011 WL 843913, at *7.

At most, Plaintiff has alleged that he would not have been injured (and excessive force would not have been used) if the City of St. Paul had provided Lt. (Unknown) with "public sensibility training." This is not sufficient to state a claim for failure to train under § 1983. *See Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal."). Therefore, because Plaintiff has not pleaded facts plausibly showing that the City of St. Paul was deliberately indifferent in the training of its law enforcement officers' use of force, Plaintiff has failed to state a § 1983 claim for failure to train against the City of St. Paul. *See B.A.B.*, 698 F.3d at 1040-41; *Daywitt*, 2015 WL 4094199, at *11-12.

### 4. Emotional Distress

As best as this Court is able to tell, Plaintiff does not appear to be asserting a separate claim for intentional infliction of emotional distress. Rather, Plaintiff appears to be seeking damages for emotional distress in conjunction with his other claims. (*See, e.g.*, Compl. at 4 ("causing me MENTAL . . . pain"); Am. Compl. at 1 ("actions of [Lt. (Unknown)] has also caused . . . POST TRAUMATIC STRESS DISORDER and IIED (Intentional Infliction of Emotional Distress)"), Pl.'s Reply at 2 (same).)

To the extent Plaintiff's filings can be read as asserting a separate claim for intentional infliction of emotional distress, however, this claim is barred by the applicable statute of limitations. "In Minnesota intentional personal injury torts such as assault, battery, or intentional infliction of emotional distress are governed by a two year statute of limitations period . . . ." *Strandlund v. Hawley*, 532 F.3d 741, 746 (8th Cir. 2008) (citing Minn. Stat. § 541.07(1)); *see* Minn. Stat. § 541.07(1) (actions "for libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury" shall be commenced within two years); *Wenigar v. Johnson*, 712 N.W.2d 190, 209 (Minn. Ct. App. 2006) ("[T]here is [a] two-year statute of limitations for commencing an intentional infliction of emotional distress claim."); *Christenson v. Argonaut Ins. Cos.*, 380 N.W.2d 515, 518 (Minn. Ct. App. 1986) ("We conclude that the two-year statute of limitations in Minn. Stat. § 541.07(1) governs actions for the intentional infliction of emotional distress."). Lt. (Unknown)'s alleged use of excessive force took place in July 2015. Plaintiff filed this action in September 2017, more than two years later. Therefore, any

claim for intentional infliction of emotional distress by Lt. (Unknown) is time-barred and should be dismissed with prejudice.

[Continued on next page.]

## V. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Defendant Ramsey County's Motion to Dismiss (ECF No. 15) **BE GRANTED**.

2. Defendant St. Paul Police Department's Motion to Dismiss (ECF No. 19) **BE GRANTED**.

3. All claims against the St. Paul Police Department be dismissed with prejudice.

4. Any claim for intentional infliction of emotional distress be dismissed with prejudice.

5. All remaining claims be dismissed without prejudice.


Date: May 23 , 2018                     _____ *s/ Tony N. Leung* _____
                                        Tony N. Leung
                                        United States Magistrate Judge
                                        for the District of Minnesota

                                        *Pitts v. Ramsey County et al.*
                                        Case No. 17-cv-04261 (MJD/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).